UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:25-cr-131-(6) |
| | § | |
| AMER KHAN, | § | |
| | § | UNDER SEAL |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through John Marck, United States Attorney for the Southern District of Texas, S. Mark McIntyre, Carolyn Ferko and Craig Feazel, Assistant United States Attorneys, and, the defendant, Amer Khan ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges Defendant with Conspiracy, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000 or twice the gross gain or loss resulting from the offense. Additionally, Defendant may receive a term

2

of supervised release after imprisonment of not more than three years. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than two years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

3

of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 21 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to activity related to violations of federal program bribery, illegal gambling businesses, travel act violations, and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

4

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7.   Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-

5

barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time- barred on the date that this Agreement is signed.

9.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.  Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

6

**The United States' Agreements**

11. The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Count One of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

(b)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently; and

(c)    At the time of sentencing, the United States agrees not to oppose a finding that the Defendant is not a leader or organizer U.S.S.G. § 3B1.1.

12. The United States Attorney's Office for the Southern District of Texas agree that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)    to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that

office's preparation of a presentence report;

(b)      to set forth or dispute sentencing factors or facts material to sentencing;

(c)      to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)      to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)      to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

8

(a)     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16.     Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Nizar Ali was the owner/operator or partial owner/operator of approximately thirty (30) illegal game rooms operating in the Southern District of Texas. Nizar Ali employed multiple individuals to work as managers of his game rooms. In this role, managers supervised the gambling operations of the game rooms; paid the employees and expenses in cash; negotiated employment issues and work schedules; created ledgers and balance sheets showing the profits[1]; and collected illegal proceeds and provided them to money couriers who funneled the money back to either Naeem[2] or Nizar Ali.

Nizar Ali employed multiple individuals to work as money couriers for his illegal game rooms. In this role, money couriers were responsible for collecting, calculating, and transporting illegal cash proceeds from game room locations to Naeem and Nizar Ali. The money couriers picked up the game room profits from the game room managers and checked the game machines to determine the gross profit from the machines on a daily basis[3]. They then reviewed the ledgers and balance sheets from the game room managers to assure that the gross profit amount matched up with the

---

[1] The game room managers referred to the ledgers and balance sheets as "paperwork."

[2] Naeem Ali is the son of Nizar Ali and laundered the illegal proceeds as described below.

[3] The money couriers referred to this process as "readings."

9

gross profit amount from the game machines. Every five days the money couriers would transfer the game room proceeds to either Naeem or Nizar Ali or someone acting on their behalf.

Naeem Ali and Nizar Ali would receive from money couriers the cash proceeds from the illegal gambling businesses and launder them by (a) depositing them into various bank accounts opened in the names of catering businesses, (b) providing cash proceeds to third parties who would then issue checks and electronic payments purporting to be salaries or income to conspirators and family member of conspirators, and (c) purchasing real estate using cash proceeds not reflected in the purchase documents.

The thirty (30) illegal game rooms owned by Nizar Ali that allowed customers to play various games on electronic gambling devices, such as 8-liner gambling machines, set up within the premises. The patrons of these game rooms handed cash to the game room attendants and could place bets while playing games on various electronic gambling devices. When customers were done playing, customers then redeemed any winnings amassed while gambling. Those winnings were paid out in cash by game room attendants.

All of Nizar Ali's game rooms operated in largely the same illegal manner. Each location allowed customers to gamble on physical, electronic gambling devices. Customers, who were admitted to the game room premises, manipulated the controls of these devices while simultaneously setting amounts wagered. Wins or losses, determined by chance, were tracked electronically by a proprietary software system that was used at each location.

The gambling business overseen by Nizar Ali involved over five individuals who conducted, financed, managed, supervised, directed, or owned all or part of their gambling business. The gambling business overseen by Nizar Ali had been or remained in continuous operation for a period exceeding 30 days and had gross revenues of more than $2,000 on a single day. The co-conspirators used cellphones to conduct the day-to-day operation of the gambling business and to communicate regarding the amounts of profits earned from the business. The gambling business routinely paid out cash prizes that exceeded $5 and more than ten times the amount wagered. The gambling businesses violated Texas state law (Texas Penal Code, Chapter 47) as well as the laws of the political subdivision of Harris County, Texas, contained in the Harris County Game Room Regulations, in which political subdivision the gambling business was conducted, by operating a game room without a permit, failing to display a game room permit, exceeding the hours of operation, and requiring a game room membership.[4]

Nizar Ali gave cash bribes totaling over $500,000 to an undercover Houston Police Department office to influence law enforcement operations, to provide protection for himself and his game

---

[4] The operation of the game rooms violated Texas Penal Code, Chapter 47, which prohibits the operation of a physical location used for such gaming activities, as well as the possession and operation of gaming devices that afford players an opportunity to obtain a cash prize solely or partially by chance. The game rooms also violated the laws of Harris County, Texas, specifically Chapter 234 of the Local Government Code.

10

rooms from raids or inspections (i.e., "protection payments"), and to target the operations of rival game rooms for raids and closure. The Houston police department was a local government agency that received federal funding well in excess of $10,000 for each of the years 2019 through 2025.

The defendant was a money courier from late 2021 until the time of his arrest in 2025 for several of the illegal game rooms which at various times included Uvalde (13131 East Freeway), Baytown Gaming (200 East Texas), and Lathrope (7120 East Freeway) game rooms, which operated in the same illegal manner as the game rooms described above. Defendant did the readings and picked up the money from the game rooms every morning. Defendant then did the paperwork which involved him calculating the net profit from the game rooms. Nizar Ali paid defendant five percent of the profit from the game rooms and an additional $50 per each game room location. The remaining profit was wrapped in the paperwork and designated for Nizar Ali. The maximum jackpot payout in the game rooms was $5,000.

Every five days, Defendant would hand deliver the illegal game room proceeds to either Nizar Ali, or someone acting on his behalf, which included co-defendants Sayed Ali and Sahil Karovalia. Occasionally Naeem Ali would pick up the proceeds from the Defendant. From this time period, defendant was making approximately $9,000 a month, though it varied depending on which and how many of the aforementioned game rooms he was assigned at a particular time. Defendant agrees he obtained at least $250,000 in proceeds for his role in the scheme.

Defendant routinely used his cellular telephone to communicate with co-conspirators about the operation of the illegal game rooms, the amounts of profits, and to coordinate the delivery of illegal proceeds to co-conspirators. Below are some examples of those telephonic and other communications:

On July 31, 2023, Defendant met with co-defendant Naeem Ali and provided him game room proceeds.
On October 2, 2023, Defendant transported ledgers and game room proceeds to his residence for eventual delivery to Nizar Ali.
On February 6, 2024, co-defendant Sahil Karovalia telephoned Defendant and directed him to pick up two packages of game room proceeds from the Lathrop game room.
On February 9, 2024, co-defendant Sayed Ali telephoned defendant, and they discussed protection money, which was $10,000 or $15,000.
On or about February 13, 2024, Nizar Ali telephoned Defendant, and they discussed game room proceeds from the previous day being short.

From March of 2023 to February of 2024, during wire interceptions, Defendant had more than forty-five (45) phone calls with co-conspirators including Nizar Ali, Sayed Ali, Naem Ali, Sahil Karovalia and others discussing the day-to-day operation of the illegal game rooms. These telephonic conversations discussed the "pulls" from the gaming machines, profits from the game rooms, money "pickups" and or collection of "envelopes," game room employee's schedules, security of locations, illegal payouts, problem customers, suspicious activities of concern, and any problems with law enforcement.

11

**Breach of Plea Agreement**

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution

12

and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Restitution

20. Defendant agrees to pay full restitution to any victim regardless of the count of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

## Forfeiture

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation including but not limited to the following specific asset: $94,492.00 in United States Currency;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $250,000 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount;

13

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

22.   Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

23.   This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior

14

understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___ Texas, on ___June 18___, 2026.

_____
Amer Khan
Defendant

Subscribed and sworn to before me on ___June 18___, 2026.
NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

John Marck
United States Attorney

By: _____
S. Mark McIntyre
Carolyn Ferko
John Marck
Assistant United States Attorneys
Southern District of Texas
United States Attorney's Office

_____
Cordt Akers
Attorney for Defendant

15

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:25-cr-131-(6) |
| | § | |
| AMER KHAN, | § | UNDER SEAL |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Cordt Akers
Attorney for Defendant

_____6/18/26_____
Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorneys have fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual

16

which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Amer Khan
Defendant

6-18-26
_____
Date

17