**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:25-cr-131-(14)** |
| | § | |
| **VIVIANA ALVARADO,** | § | |
| | § | **UNDER SEAL** |
| | § | |
| **Defendant.** | § | |

**<u>PLEA AGREEMENT</u>**

The United States of America, by and through Aaron F. Reitz, United States Attorney for the Southern District of Texas, S. Mark McIntyre, Carolyn Ferko and Craig Feazel, Assistant United States Attorneys, and, the defendant, Viviana Alvarado ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges Defendant with Conspiracy, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2. The **<u>statutory</u>** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than three years. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2). Defendant

acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then Defendant may be imprisoned for not more than two years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to her immigration status. Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea

of guilty, and Defendant affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 21 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to activity related to violations of federal program bribery, illegal gambling businesses, travel act violations, and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw her plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that she may have received from her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges she is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law; and

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

12. The United States Attorney's Office for the Southern District of Texas agree that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

15. Defendant understands that by entering into this agreement, she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf. If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, she could testify on her own behalf.

**Factual Basis for Guilty Plea**

16. Defendant is pleading guilty because she is in fact guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Nizar Ali was the owner/operator or partial owner/operator of approximately thirty (30) illegal game rooms operating in the Southern District of Texas. Nizar Ali employed multiple individuals to work as managers of his game rooms. In this role, managers supervised the gambling operations of the game rooms; paid the employees and expenses in cash; negotiated employment issues and

work schedules; created ledgers and balance sheets showing the profits[1]; and collected illegal proceeds and provided them to money couriers who funneled the money back to either Naeem[2] or Nizar Ali.

Nizar Ali employed multiple individuals to work as money couriers for his game rooms. In this role, money couriers were responsible for collecting, calculating, and transporting illegal cash proceeds from game room locations to Naeem and Nizar Ali. The money couriers picked up the game room profits from the game room managers and checked the game machines to determine the gross profit from the machines on a daily basis[3]. They then reviewed the ledgers and balance sheets from the game room managers to assure that the gross profit amount matched up with the gross profit amount from the game machines. Every five days the money couriers would transfer the game room proceeds to either Naeem or Nizar Ali.

Naeem Ali and Nizar Ali would receive from money couriers the cash proceeds from the illegal gambling businesses and launder them by (a) depositing them into various bank accounts opened in the names of catering businesses, (b) providing cash proceeds to third parties who would then issue checks and electronic payments purporting to be salaries or income to conspirators and family member of conspirators, and (c) purchasing real estate using cash proceeds not reflected in the purchase documents.

The thirty (30) game rooms owned by Nizar Ali that allowed customers to play various games on electronic gambling devices, such as 8-liner gambling machines, set up within the premises. The patrons of these game rooms handed cash to the game room attendants and could place bets while playing games on various electronic gambling devices. When customers were done playing, customers then redeemed any winnings amassed while gambling. Those winnings were paid out in cash by game room attendants.

All of Nizar Ali's game rooms operated in largely the same illegal manner. Each location allowed customers to gamble on physical, electronic gambling devices. Customers, who were admitted to the game room premises, manipulated the controls of these devices while simultaneously setting amounts wagered. Wins or losses, determined by chance, were tracked electronically by a proprietary software system that was used at each location.

The gambling business overseen by Nizar Ali involved over five individuals who conducted, financed, managed, supervised, directed, or owned all or part of their gambling business. The gambling business overseen by Nizar Ali had been or remained in continuous operation for a period exceeding 30 days and had gross revenues of more than $2,000 on a single day. The co-conspirators used cellphones to conduct the day-to-day operation of the gambling business and to communicate regarding the amounts of profits earned from the business. The gambling business routinely paid out cash prizes that exceeded $5 and more than ten times the amount wagered. The gambling businesses violated Texas state law (Texas Penal Code, Chapter 47) as well as the laws

[1] The game room managers referred to the ledgers and balance sheets as "paperwork."
[2] Naem Ali is the son of Nizar Ali and laundered the illegal proceeds as described below.
[3] The money couriers referred to this process as "readings."

of the political subdivision of Harris County, Texas, contained in the Harris County Game Room Regulations, in which political subdivision the gambling business was conducted, by operating a game room without a permit, failing to display a game room permit, exceeding the hours of operation, and requiring a game room membership.[4]

Nizar Ali gave cash bribes totaling over $500,000 to an undercover Houston Police Department officer to influence law enforcement operations, to provide protection for himself and his game rooms from raids or inspections (i.e., "protection payments"), and to target the operations of rival game rooms for raids and closure. The Houston police department was a local government agency that received federal funding well in excess of $10,000 for each of the years 2019 through 2025.

Defendant Viviana Alvarado began working for Nizar Ali in 2022 and was the manager of the game rooms at 16602 Sealark (the El Camino/Clear Lake game room) and 14222 Gulf Freeway (the Simba/Scarsdale game room) which operated in the same illegal manner as the game rooms described above. Alvarado managed the game rooms from 2022 until September of 2024. Nizar Ali paid Alvarado $50 per day plus 10 percent of the game room profits for managing the game rooms and Defendant made approximately $1,500 per week. Alvarado daily collected the money from the game machines ("pulls"), did the readings for the game rooms, paid herself and employees from the proceeds, created handwritten ledgers showing the profits and expenses, wrapped the ledgers around the illegal game room proceeds, and delivered them to either Nizar Ali or co-defendants acting on behalf of Nizar Ali. Alvarado routinely used her cellular telephone to message Nizar Ali about the profits of the game rooms and other operational matters related to her running of the game rooms. Defendant agrees that she personally obtained at least $50,000 in illegal proceeds for her role in the scheme

Defendant Alvarado knew the game rooms were illegal and Alvarado paid out $2,500 jackpots to customers on more than one occasion. Alvarado used her cellular telephone to coordinate the running of the game room and to communicate about the operations of the game room with co-conspirators. Nizar Ali told Alvarado that he paid the police to protect his game rooms from raids.

On August 7, 2023, Defendant Alvarado called co-defendant Naeem Ali, and they arranged for the transfer of illegal game room proceeds.

Later that same day, Defendant Alvarado met with co-defendant Naeem Ali at the El Portal Nightclub and gave him illegal game room proceeds.

On August 15, 2023, Defendant Alvarado met with co-defendant Naeem Ali at the El Portal Nightclub and gave him illegal game room proceeds. Co-defendant Naeem Ali was stopped by

[4] The operation of the game rooms violated Texas Penal Code, Chapter 47, which prohibits the operation of a physical location used for such gaming activities, as well as the possession and operation of gaming devices that afford players an opportunity to obtain a cash prize solely or partially by chance. The game rooms also violated the laws of Harris County, Texas, specifically Chapter 234 of the Local Government Code.

police shortly after the transfer and was in possession of several bags of cash and game room ledgers.

From March 2023 to February 2024, during wire interceptions, Defendant Alvarado had more than five (5) phone calls with co-conspirators including Nizar Ali, and Naeem Ali, in which they discuss the day-to-day operation of multiple illegal game rooms. These telephonic conversations discussed the "pulls" from the gaming machines, profits from the game rooms, money "pickups" and or collection of "envelopes," game room employee's schedules, security of locations, illegal payouts, problem customers, suspicious activities of concern, and any problems with law enforcement.

**Breach of Plea Agreement**

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass

clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Restitution**

20. Defendant agrees to pay full restitution to any victim regardless of the count of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

**Forfeiture**

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $50,000 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

22. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

23. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior

understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at 29th, Texas, on September, 2026.

Viviana alvarado
Viviana Alvarado
Defendant

Subscribed and sworn to before me on September 29, 2026.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: ______________________
Deputy United States District Clerk

APPROVED:

Aaron F. Reitz
United States Attorney

By: ______________________
S. Mark McIntyre
Carolyn Ferko
Craig Feazel
Assistant United States Attorneys
Southern District of Texas
United States Attorney's Office

______________________
Robert Teir
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:25-cr-131-(14)** |
| | § | |
| **VIVIANA ALVARADO,** | § | **UNDER SEAL** |
| **Defendant.** | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

Robert Teir
Attorney for Defendant

29 September 2026
Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorneys have fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual

which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

Viviana Alvarado 9-25-26

Viviana Alvarado
Defendant

Date